*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0371P (6th Cir.)
File Name:  02a0371p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　*v.*　　　　　　　　　　　　　　No. 00-5462

ALLEN LAWRENCE, JR.,
　　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 99-00039—Henry R. Wilhoit, Jr., District Judge.

Argued:  March 18, 2002

Decided and Filed:  October 28, 2002

Before:  BATCHELDER and CLAY, Circuit Judges;
CARR, District Judge.[*]

———————

## COUNSEL

**ARGUED:**  Kevin M. Schad, SCHAD & COOK, Indian Springs, Ohio, for Appellant.  Kevin C. Dicken, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for

———————

[*] The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

1

Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & COOK, Indian Springs, Ohio, for Appellant.  Kevin C. Dicken, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

———————————

### OPINION

———————————

JAMES G. CARR, District Judge.  Defendant-appellant, Allen Lawrence, Jr., and his co-defendants were charged in a multi-count indictment alleging: one count of intent to distribute cocaine, in violation of 21 U.S.C. § 846; two counts of aiding and abetting in the possession of cocaine, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2; one count of money laundering, in violation of 18 U.S.C. § 1956; one count of possession of a machine gun, in violation of 18 U.S.C. § 922(o); and two counts of possession of a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

Lawrence pled not guilty. His pretrial suppression motion was denied. Thereafter, he requested leave to proceed pro se, which was granted. Trial commenced on December 6, 1999; on December 8, 1999, the jury returned a verdict of guilty as to all counts.

On March 3, 2000, Lawrence was sentenced to 188 months on the drug counts, with a consecutive 360 months on the weapons charges.

Lawrence appeals his conviction and sentence under 18 U.S.C. § 924(c), and his sentence pursuant to his conviction under 21 U.S.C. § 841(a). Additionally, Lawrence appeals his indictment and the district court's handling of his motion to suppress.

Lawrence raises seven assignments of error. For the following reasons, we: 1) reverse Lawrence's conviction as to count four of his superseding indictment; 2) vacate

held to the contrary that *Apprendi* did apply to statutory minimums. *See, e.g., United States v. Humphrey*, 287 F.3d 422, 447 (6th Cir. 2002), *United States v. Ramirez*, 242 F.3d 348, 351 (6th Cir. 2001), *United States v. Strayhorn*, 250 F.3d 462, 469–70 (6th Cir. 2001); *United States v. Rebmann*, 226 F.3d 521, 524 (6th Cir. 2000); *United States v. Flowal*, 234 F.3d 932, 936 (6th Cir. 2000).  But *Harris* has clearly overruled our previous conclusion, and hence has overruled the portions of these and other prior cases that embody that conclusion.  We consequently find that Lawrence's *Apprendi* challenge is meritless.

### CONCLUSION

For the foregoing reasons, we:

1) **REVERSE** Lawrence's conviction as to count four of his superseding indictment;

2) **VACATE** Lawrence's sentence as to count five and **REMAND** for re-sentencing;

3) **VACATE** Lawrence's sentence enhancement under § 3C1.1 and **REMAND** for re-sentencing; and

4) **AFFIRM** the district court as to the remaining assignments of error.

Regarding the former, *Apprendi* by its terms applies only where the finding "increases the penalty for a crime beyond the prescribed *statutory* maximum," 530 U.S. at 490 (emphasis added), and we have squarely held that *Apprendi* does not apply to the Guidelines. *See United States v. Garcia*, 252 F.3d 838, 843 (6th Cir. 2001) ("*Apprendi* does not purport to apply to penalties in excess of any particular range or based on any particular offense level under the Sentencing Guidelines."). *Accord United States v. Fields*, 251F.3d 1041, 1043–44 (D.C. Cir. 2001) ("*Apprendi* does not apply to enhancements under the Sentencing Guidelines when the resulting sentence remains within the statutory maximum."); *United States Meshack*, 225 F.3d 556, 576 (5th Cir. 2000); *Talbott v. Indiana*, 226 F.3d 866, 869–70 (7th Cir. 2000). We consequently find this proposition meritless.

Whether *Apprendi* applies at all in cases where the defendant was sentenced below  the statutory maximum, is governed by *Harris v. United States*, 122 S. Ct. 2406 (2002). In *Harris*, four members of the Court explicitly said that facts affecting only a statutory minimum sentence need not be charged in the indictment or found by the jury beyond a reasonable doubt, and such facts may instead be found by the judge. 122 S. Ct. at 2418–19 (plurality opinion). A fifth justice, while not joining in that plurality opinion, opined that in his view, the Sixth Amendment does not even require the result the Court reached in *Apprendi*, much less that facts affecting the statutory minimum sentence be included in the indictment and found beyond a reasonable doubt. 122 S. Ct. at 2420–21 (Breyer, J., concurring in part and concurring in the judgment). Finally, the majority of the Court reaffirmed *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), which upheld the constitutionality of a Pennsylvania statute that mandated a minimum sentence of five years for certain felonies where the judge found, by a preponderance of the evidence, that the defendant visibly possessed a firearm during the crime.

*Harris*, then, held that *Apprendi* is about statutory *maximums*, and it established that *Apprendi* does not apply to changes in the statutory minimum. Prior to *Harris*, we had

Lawrence's sentence as to count five and remand for re-sentencing; and 3) vacate Lawrence's sentence enhancement under sentencing guideline § 3C1.1 and remand for re-sentencing.  As to the remaining assignments, we affirm the district court.

## BACKGROUND

Shortly after 7:00 p.m. on April 19, 1999,  police officers in Lexington, Kentucky, noticed a trash container placed for collection on a utility strip between the street and sidewalk by Lawrence's home. Several months earlier they had received a tip from an informant relating to the Lawrence's drug-related activities.

The officers examined the trash in the container. The did not have warrant. As a result, the officers discovered plastic bags containing wrappers with cocaine residue.

On April 20, 1999, the police obtained and executed a warrant to search Lawrence's home, finding cocaine, crack cocaine, $23,000 in cash, two coolers with hollowed-out sides, and several firearms, including a machine gun and silencer.  Lawrence and another individual present at the house, Danny Young, were subsequently arrested.

At the time of the arrest, the police claimed that  Lawrence waived the rights prescribed by in *Miranda v. Arizona*, 384 U.S. 436 (1966), and made several incriminating statements, including: 1) all the drugs belonged to him; 2) his cocaine supplier gave him the machine gun; 3) he used runners, including Danny Young, to transport the drugs; and 4) he had distributed approximately forty kilograms of cocaine in Lexington over the past eight months.  At trial, Lawrence denied making these statements, and further denied any involvement with the drugs found at his residence.

A federal grand jury returned an indictment charging Lawrence with various drug trafficking offenses, and a superseding indictment charging him with money laundering and forfeiture. Prior to trial, the district court denied

Lawrence's motion to suppress the evidence found at his residence and his statement to the police. At trial, Lawrence pled not guilty, denied all charges, and requested to proceed pro se, which the court granted. On December 8, 1999, the jury returned a verdict of guilty on all counts.

At sentencing, Lawrence received 188 months imprisonment on the drug counts, with a consecutive 360 months on the weapons charges. The court increased the base offense level by two levels on the basis of a finding that he had obstructed justice by giving perjurious testimony at trial. On March 3, 2000, Lawrence filed his notice of appeal.

## DISCUSSION

### I. First Assignment of Error

Lawrence claims that the district court erred in denying his motion to suppress all the evidence resulting from the warantless search of his trash cans. "In reviewing a district court's suppression determinations, this Court reviews findings of fact for clear error, and legal conclusions *de novo*." *United States v. Ivy*, 165 F.3d 397, 401 (6th Cir. 1998).

Lawrence challenges the trial court's factual determination relating to the location of his trash cans at the time the police searched them. At the suppression hearing the government offered testimony that the cans were on the utility strip in front of his house when they were searched. Lawrence offered testimony supporting his contention that the cans were at the side of his garage in an area that was not accessible to the public.

The district court chose to believe the government's witnesses over Lawrence's witnesses. Thus, the district court made a credibility determination, and "findings of fact anchored in credibility assessment are generally not subject to reversal upon appellate review." *Ivy*, 165 F.3d at 401. Additionally, "when there are two permissible views of the evidence, the fact finder's choice between them cannot be

rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Because Lawrence failed to object to this finding in the district court, we review his challenge for plain error. *United States v. Page*, 232 F.3d 536, 543 (6th Cir. 2000).

In *Apprendi*, the Supreme Court held:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule . . . "It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

530 U.S. at 490 (quoting *United States v. Jones*, 526 U.S. 227, 252–53 (Stevens, J., concurring)) (citing *Jones*, 526 U.S. at 253 (Scalia, J., concurring)).

Here, a jury found Lawrence guilty of violating 21 U.S.C. § 841(a)(1), but because the jury did not determine the amount, under *Apprendi* Lawrence had to be sentenced at or below the twenty-year maximum prescribed in § 841(b)(1)(C). *See Page*, 232 F.3d at 543. This requirement was satisfied, since Lawrence received a sentence of 188 months' imprisonment.

Nonetheless, Lawrence argues that an *Apprendi* violation occurred because the court's determination established his minimum sentence under the Guidelines at 188 months. In so arguing, he proposes (1) that even if the increase of his minimum from 0 months to 188 months was only a product of the Guidelines, its factual basis should still have been established beyond a reasonable doubt by a jury, and (2) that any increase of a defendant's minimum sentence must be proven beyond a reasonable doubt, even if the defendant was in fact sentenced below the proper statutory maximum. We reject both of these propositions.

118 F.3d at 502. At a minimum, we require the district court to indicate which portions of defendant's testimony were perjurious, and to apply the elements of perjury to those portions of the testimony.

In the instant case, Lawrence argues that the district court failed to make proper findings of fact to support a determination that he committed perjury in his trial testimony which led to a two-level sentence enhancement for obstruction of justice under § 3C1.1. At the sentencing hearing, the court overruled Lawrence's objection to the enhancement and replied, generally, that it did not believe his testimony at trial, nor did the jury. The Court stated: "Well, I presided at the trial. I heard all of the testimony. There is no way that Danny Young was on his own, and I believe you were the person that was directing that. . . . In regard to obstruction of justice, I heard your testimony, and there was very little that I believed. I don't think there was very much the jury believed taking their verdict in the case." (J.A. at 557–58).

This is the same type of review of testimony that the district court had conducted in *Sassanelli*. Here, the district court made no indication which portions of defendant's testimony were perjurious nor did the court apply any of the elements of perjury to the testimony. Therefore, the court's finding is insufficient under our requirements for sentence enhancement under § 3C1.1. Accordingly, defendant's sentence is vacated with respect to the two-level enhancement under § 3C1.1, and remanded for re-sentencing consistent with this opinion.

## VII.  Seventh Assignment of Error

In his final assignment of error, Lawrence argues that the precise amount of drugs attributable to him should have been determined by the jury, and that the district court's determination,[4] by a preponderance of evidence, violated his

---

[4] At sentencing, the court adopted a finding of 8,452.18 grams of cocaine—the drug amounted listed in the presentence report.

clearly erroneous." *Id.* at 401–02. Accordingly, we affirm the denial of Lawrence's motion to suppress.

## II.  Second Assignment of Error

Lawrence next contends that the district court abused its discretion by failing to re-open the suppression hearing to enable him to challenge the validity of statements he made during and shortly after his arrest. The record, however, establishes that, prior to the initial suppression hearing, the government informed Lawrence's counsel that it intended to use the statements during trial. Additionally, Lawrence challenged the validity of the statements at trial. Thus, the record demonstrates that there was no reason to re-open the suppression hearing.

Lawrence also argues that the court erred by not allowing Victoria Nolan to testify in support of his suppression motion. Ms. Nolan, who had provided the police with information relied on in obtaining the search warrant for Lawrence's home, asserted her right against self-incrimination at the suppression hearing. The district court correctly noted that, even if Nolan's statements were excised from the search warrant affidavit, the remaining information obtained through the search of Lawrence's trash supplied sufficient probable cause for the search warrant. This being so, we cannot say that the district court's refusal to reopen the suppression hearing was an abuse of discretion.

In addition to these challenges, Lawrence also argues that the record indicates that the police officers failed to "knock and announce" prior to entering his home. *See United States v. Dice*, 200 F.3d 978, 982 (6th Cir. 2000) ("Absent certain exigent circumstances, it is unreasonable under the Fourth Amendment for an officer to enter a dwelling without first knocking and announcing his presence and authority."). Lawrence, however, failed to raise this issue below. Consequently, Lawrence waived this argument and this Court cannot hear his appeal. *United States v. Critton*, 43 F.3d 1089, 1093 (6th Cir. 1995) ("This court has held that we have

no jurisdiction to hear appeals of suppression issues raised for the first time on appeal.").

### III.  Third Assignment of Error

Lawrence contends that there were numerous errors in the indictment and arraignment process that warranted an evidentiary hearing, which the district court failed to conduct. We find, however, that the district court did not abuse its discretion when it declined to hold the hearing sought by Lawrence.

Lawrence contends that the court should have held a hearing on his objections to his superseding indictment.  At sentencing, Lawrence raised an objection alleging that he had been unable to obtain a copy of his superseding indictment and that the indictment had been missing from his case file, only to reappear prior to sentencing.  The court, however, overruled this objection, finding it procedurally incorrect because Lawrence had not filed an objection to the presentence report, which included the indictment. In light of this reasoning, there was no need for the court to conduct an evidentiary hearing on Lawrence's objection to the superseding indictment.

Additionally, Lawrence waived any objections to defects in the superseding indictment at his arraignment.  At that time, the court provided Lawrence and his counsel with a copy of the superseding indictment.  The court offered Lawrence and counsel a four-day continuance to review the indictment, which they had not reviewed previously.  Lawrence's counsel, however, stated that, with a short recess to make sure no surprises were contained in the new indictment, they would waive any defects in the indictment.  The court provided the recess to enable Lawrence and counsel to review the new indictment.  Lawrence then returned, stated that he was aware of the charges against him, and pled not guilty.

In addition to his challenge to the superseding indictment, Lawrence contends that the district court should have held a hearing to determine whether the grand jury proceeding

perjury under § 3C1.1.  In *United States v. Comer*, 93 F.3d 1271, 1282 (6th Cir. 1996),   we upheld a sentence enhancement where the district court specified several false statements made by defendant and articulated why it considered them to be perjurious.[2]   In a similar decision upholding a sentence enhancement, this circuit found the district court's findings sufficient  when the court pointed specifically to conflicts between defendant's tape-recorded comments prior to trial and his trial testimony. *Mise*, 240 F.3d at 531.

In *United States v. McRae*, 156 F.3d 708, 713 (6th Cir. 1998),  however,  we  vacated  defendant's  sentence enhancement where the district court failed to specify any areas of conflicting testimony or to make independent findings with respect to the elements of perjury in defendant's trial testimony.[3]  We noted that an "enhancement may not be affirmed on an inference that the ruling was based upon the government's arguments." *Id.*

It will not be enough, therefore, for a court to recognize conflicting testimony and to resolve, in its own mind, which witness is credible; nor will it be sufficient for a sentencing judge to broadly consider everything defendant said at trial to be perjurious. *Spears*, 49 F.3d at 1143.  The district court must be specific.   As we explained in *Sassanelli*, a case in which the district court stated broadly that it considered almost everything defendant said at trial to be perjurious, the district court "did not identify any examples of such perjury, and it did not attempt to apply the elements of perjury to such examples, as required by *Dunnigan* and *Spears*." *Sassanelli*,

---

[2]In *Comer*, we explained: "We require the sentencing judge to identify specific instances justifying the enhancement for obstruction of justice." 93 F. 3d at 1282.

[3]In *McRae*, this Court held that to comply with *Dunnigan*, a district court must: 1) identify for the record at least some specific instances of conflicting testimony; 2) specify which portions the court finds materially perjurious; and 3) explain why the perjury was material. 156 F.3d at 713.

with respect to testimony given under oath. *United States v. Burnette*, 981 F.2d 874, 879 (6th Cir. 1992). Similarly, in *United States v. Clark*, 982 F.2d 965, 970 (6th Cir. 1993), we stated that, when assigning points for obstruction of justice, the district court should identify specifically which statements or actions by a defendant constitute an obstruction of justice.

Interpreting *Dunnigan*, however, we have clarified our earlier decisions, and set forth our own requirements for sentence enhancement in compliance with the Supreme Court's in *Dunnigan*. In addition to protecting defendants who testify at trial, these requirements provide a meaningful record to determine which statements the district court considered to be perjurious and whether the court found those statements to satisfy each element of perjury. *United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997). For a district court to enhance a defendant's sentence under § 3C1.1, the court must: 1) identify those particular portions of defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury. *United States v. Mise*, 240 F.3d 527, 531 (6th Cir. 2001) (citing *Sassanelli*, 118 F.3d at 501).

As indicated in *Sassanelli*, the second requirement was held by the Supreme Court to be necessary under § 3C1.1. *Sassanelli*, 118 F.3d at 501 (citing *United States v. Spears*, 49 F.3d 1136, 1143 (6th Cir. 1995)). The first of these requirements, however, is a rule of our own creation to assist us in our review of sentence enhancements under § 3C1.1, though we have never insisted on a rigid adherence to its terms. *Id.* Thus, a district court's findings will be adequate if: 1) the record is sufficiently clear to indicate which statements the district court considered perjurious; and 2) the district court found that the statements satisfied each element of perjury. *Id.*

Since *Dunnigan*, this Circuit has uniformly applied these requirements in cases involving sentence enhancements for

complied with Fed. R. Crim. P. 6(f). Rule 6(f) requires that a "grand jury may indict only upon the concurrence of 12 or more jurors," and that the "indictment shall be returned by the grand jury, or through the foreperson or deputy foreperson on its behalf, to a federal magistrate judge in open court." The record indicates that the grand jury proceedings complied with Rule 6(f).

On November 19, 1999, Lawrence moved to dismiss the indictment and superseding indictment, claiming, among other things, that the indictment had not been returned in open court as required by Rule 6(f). The government filed an opposition to this motion, and on December 6, 1999, the court rejected Lawrence's motion. The record is clear that the grand jury proceeding complied with Rule 6(f). In fact, in denying Lawrence's motion, the court reviewed the grand jury record and concluded: "The original indictment there were 21 grand jurors concurred, and the superseding there were 20 grand jurors concurred. It shows that the indictment was returned in open court." (J.A. at 387).

Also under his third assignment of error, Lawrence asserts that the district court violated his "right to a speedy arraignment" under the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. § 3161. In making this argument, however, Lawrence misconstrues the Speedy Trial Act, which only requires an indictment, not an arraignment, within thirty days of arrest. 18 U.S.C. § 3161(b). The Speedy Trial Act ensures that a defendant is indicted, tried, and not unduly detained; it does not explicitly address the arraignment process.

Lawrence was arraigned on the superseding indictment on the same day the district court heard arguments on his motion to suppress. Even if Lawrence's arguments as to the delay were valid, his suppression motion, which was filed on June 11, 1999, tolled the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F). Thus, we find that Lawrence has not shown that his trial was improperly delayed.

## IV.  Fourth Assignment of Error

Lawrence next challenges his conviction under 18 U.S.C. § 924(c) on the grounds that there was insufficient evidence presented at trial to support such a conviction.  We review claims of insufficient evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In pertinent part 18 U.S.C. § 924(c) provides:

any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--

(i) be sentenced to a term of imprisonment of not less than 5 years.[1]

Lawrence concedes ownership of all the firearms, including the machine gun, identified in counts four and five of the superseding indictment, but argues that there was insufficeint evidence that his possession was "in furtherance of" a drug crime.

This Court recently answered the question of what the "in furtherance of" language of § 924(c) means in *United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001).  In *Mackey*, we determined that the "term 'furtherance' should be understood in its ordinary or natural meaning," which is "a helping forward: advancement, promotion." *Id.* at 460–61.  Or put more plainly, "the weapon must promote or facilitate the

---

[1]Section 924(c)(1)(B)(ii) states that the applicable term of imprisonment for persons convicted of possessing a machine gun shall be a term of no less than thirty years.

§ 3C1.1 provide a non-exhaustive list of the types of conduct that encompass a sentence enhancement for obstruction of justice, including "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1 n.4.

To determine what constitutes perjury under the guidelines, courts have relied on the definition the Supreme Court applied in *United States v. Dunnigan*, 507 U.S. 87 (1992).  In *Dunnigan* the Court dealt directly with the issue of perjury and § 3C1.1.  Perjury occurs when a witness, testifying under oath or affirmation, "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* at 94.

In *Dunnigan* the Court explained that, though a defendant's right to testify at trial does not include a right to commit perjury, a defendant who is found guilty must not be penalized by an enhancement under § 3C1.1 simply for having testified on his or her own behalf. *See id.* at 95. To protect a defendant from this danger, and to avoid discouraging defendants from testifying truthfully at trial, the Court instituted constitutional requirements for the application of § 3C1.1. If a defendant objects to a sentence enhancement resulting from his or her trial testimony, the district court must review the evidence and make independent findings necessary to establish a willful impediment to or the obstruction of justice resulting from defendant's perjury. *Id.* When doing so, the court should address each element of the putative perjury in a separate and clear finding. *Id.* Alternatively, a court may conclude that enhancement is appropriate on the basis of a finding of obstruction of justice that encompasses all the factual predicates of perjury. *Id.*

This circuit has been consistent in its treatment of § 3C1.1 sentence enhancements.  Prior to *Dunnigan*, we held that, at a minimum, if an obstruction of justice enhancement is to be given for false testimony, the sentencing judge, who has the unique opportunity to judge the credibility of the witness, is required to make a clear finding that the defendant has lied

Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. *The following must be raised prior to trial*:

(1) Defenses and objections based on defects in the institution of the prosecution; or

(2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings);

(emphasis added).

"This court strictly applies Rule 12(b), and has repeatedly held that failure to raise 12(b) motions in a timely fashion precludes appellate review." *United States v. Oldfield*, 859 F.2d 392, 396 (6th Cir. 1988) (citing cases). Because Lawrence failed to raise his objection in a timely fashion, this court is precluded from reviewing Lawrence's fifth assignment of error. *Id.*; *see also United States v. Castro*, 908 F.2d 85, 89 (6th Cir. 1990) ("An indictment, valid on its face, is not subject to challenge on the ground that the grand jury acted on inadequate or incomplete evidence.").

## VI.  Sixth Assignment of Error

Lawrence next contends that his sentencing enhancement for obstruction of justice based on his perjury was improper.

Section 3C1.1 of the Sentencing Guidelines authorizes a two level enhancement if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense . . ." U.S.S.G. § 3C1.1 (A). The defendant's obstructive conduct must relate to the charged offense or to a closely related offense. *See* U.S.S.G. § 3C1.1 (B). The Notes to

crime." *Id.* at 461. Other courts have similarly interpreted the "in furtherance of" language found in § 924(c). *See United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002) (the prosecution must "establish that the firearm helped, furthered, promoted, or advanced the drug trafficking"); *United States v. Iiland*, 254 F.3d 1264, 1274 (10th Cir. 2001) (specific evidence must establish that guns were possessed "in furtherance of" the drug trafficking charge); *United States v. Ceballos-Torres*, 218 F.3d 409, 415 (5th Cir. 2000) ("[F]irearm possession that furthers, advances, or helps forward the drug trafficking offense violates the statute.").

These interpretations of the language in § 924(c) are consistent with the legislative history of the 1998 amendment to § 924(c), which responded to the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995). *See* H.R. REP. NO. 105-344, at 4 (1997). *Bailey* involved the prior version of the statute, which criminalized "using or carrying a firearm during and in relation to" drug trafficking. In *Bailey*, the Court confronted the question of what "use" meant in the context of this earlier version of § 924(c). After analyzing several definitions and uses of the word, the Court concluded that Congress had intended to criminalize only the "active employment" of a firearm, not mere possession. *Bailey*, 516 U.S. at 149.

The 1998 amendment to § 924(c) inserted the broader term "possession." Congress, however, limited the meaning of the term possession by including the phrase "in furtherance of." Thus, Congress chose to make § 924(c) more stringent than mere possession, but less stringent than active employment.

By way of guidance, the Judiciary Committee Report describes when a gun is possessed "in furtherance of" an underlying offense:

The government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather,

the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.

H.R. REP. NO. 105-344, at 12 (footnotes omitted).

In light of Congress' intent not to penalize for the "mere presence" of a firearm, and our understanding of the plain meaning of the language of § 924(c), as amended, we review the circumstances leading to Lawrence's conviction.

Though Lawrence did not argue in his initial brief that the other three firearms listed in count five of the superseding indictment—a Ruger 9mm semi-automatic, an Interarms .357 revolver, and a Norinco Mac-90 rifle—were not possessed "in furtherance of" the underlying drug offense, he did assert that there was insufficient evidence to support the conviction in regards to those weapons in his reply brief. Mr. Lawrence's arguments regarding these weapons are, however, not well-taken. The jury's verdict regarding these weapons is supported by the close proximity of the weapons to the drugs and the fact that these weapons were found either loaded or with ammunition. It was quite reasonable for the jury to conclude that the weapons were placed strategically so that Lawrence could defend his drugs and money, thus satisfying the "in furtherance of" requirement of § 924(c). *See Mackey*, 265 F.3d at 462 ("In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use.").

The same cannot be said as to Lawrence's possession of the machine gun and silencer. Here, all that was shown was that Lawrence possessed the firearm. Though the machine gun was obtained along with a shipment of cocaine from Lawrence's drug supplier, he had not purchased or otherwise acted affirmatively to acquire the weapon. Instead, the record establishes it was an unsolicited gift. When the machine gun was found, it was unloaded, placed in a cupboard, and wrapped in the same newspaper in which it was covered at the time of its delivery. There was no ammunition either at hand

or on the premises. The government offered no evidence that Lawrence had ever displayed the weapon, mentioned his possession of it to anyone, or had ever fired it. From the information presented to the jury, it is at least as likely, if not more so, that Lawrence kept the machine gun as a trophy or quasi-souvenir, rather than to help him with his illegal narcotics trafficking.

Though the gun came into Lawrence's possession with a shipment of drugs, there is no indication that he possessed the gun to advance his illegalities. Because all evidence suggests that Lawrence obtained the machine gun as an unsolicited gift, it cannot be said that Lawrence's possession of the machine gun at the time of its delivery was designed to promote his drug trafficking. There is no indication that Lawrence knew even of the possibility of its existence until the weapon was in his hands. This is not to say that Mr. Lawrence's possession of the machine gun could not have satisfied the "in furtherance of" requirement of § 924(c) had Lawrence merely stated that the weapon would be used to advance his drug dealing or had he placed the weapon strategically to scare off would-be threats to his enterprise. But he did not do so. Instead, Lawrence merely stored the weapon. Nothing indicates that he intended to use the machine gun in future dealings. Without more evidence that Lawrence possessed the machine gun so that his drug trafficking might be furthered, we reverse his conviction as to count four of the indictment. Lawrence's sentence as to count five is vacated and the case is remanded for re-sentencing consistent with this opinion.

### V. Fifth Assignment of Error

Under his fifth assignment, Lawrence challenges his indictment, claiming the process was improper and rendered unreliable due to the prosecution's submission of highly inflammatory, irrelevant evidence to the grand jury. Lawrence failed to raise this issue prior to trial as required by Fed. R. Crim. P. 12(b):