NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0421n.06

No. 08-3489

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 12, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | C O U R T   F O R   T H E |
| | ) | SOUTHERN DISTRICT OF |
| FABIAN ROBERSON, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SILER, COOK, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Fabian Roberson entered a conditional guilty plea to possession with intent to distribute cocaine base, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), and carrying a firearm in furtherance of a drug trafficking crime, contrary to 18 U.S.C. § 924(c)(1)(A)(i). The district court sentenced Roberson to a total term of 180 months of imprisonment on both counts. Roberson now appeals the district court's order denying his motion to suppress evidence obtained during the execution of a search warrant at his girlfriend's residence. He contends that information contained in the police officer's affidavit underlying the search warrant was insufficient to establish the requisite probable cause to justify issuance of the warrant. For the following reasons, we affirm.

I.

In the affidavit used to obtain a search warrant leading to Roberson's arrest on drug possession and firearm charges, Hamilton County Regional Enforcement Narcotics Unit ("RENU") Officer Paul Fangman set forth the following information and allegations. On February 20, 2007, law enforcement authorities received information from a "confidential" [sic][1] source alleging that Roberson was manufacturing and trafficking in large amounts of crack cocaine from a specific address, 3665 Hillside Avenue, in Cincinnati, Ohio. The tipster gave a physical description of Roberson, stated that Roberson used a blue Cadillac to facilitate his drug trafficking operation, and indicated that Roberson lived at the single-family residence with Shaunte Martin. The source further stated that Roberson had, in the past, transported large amounts of cocaine to this address, where he allegedly manufactured cocaine and crack cocaine and prepared it for further distribution. The tipster claimed that he/she had been in the residence within the past 72 hours and observed Roberson in possession of a quantity of crack cocaine and with several dogs and guns inside the residence to provide protection for his drug trafficking operation. The tipster stated that he/she was familiar with the appearance of crack cocaine due to past contacts with crack cocaine drug abusers and traffickers. Officer Fangman, with over nineteen years of law enforcement experience, nine of which were spent as a narcotics investigator, was assigned to investigate the tip and, if warranted, to prepare an application for a search warrant of 3665 Hillside Avenue.

On the same day that the tip was received, Officer Fangman began an investigation to verify the information. A check of public records revealed that ownership of the residence, as well as

---

[1]As discussed *infra*, the informant was anonymous, not confidential.

utility service, was in the name of Shaunte Martin. The check also showed a prior utilities account in the name of Shaunte Martin at 5457 Hillside Avenue, identified as the prior address of Roberson. Officer Fangman's review of criminal records indicated that Roberson had a 1995 felony drug trafficking conviction, a 1995 resisting arrest conviction, and a 1998 corrupting a minor with drugs conviction.

Fangman and other officers established surveillance of 3665 Hillside. According to one neighbor canvassed by the officers, there had been recent and numerous transactions in front of the residence and heavy traffic in and out of 3665 Hillside. The officers observed a blue Cadillac, matching the description given by the tipster, parked on the premises. The officers observed Roberson exit the front door and stand briefly on the porch before reentering the residence. Officer Fangman noticed that trash was deposited at the curb in front of the residence and, after ascertaining that February 20, 2007, was the regularly scheduled date for trash collection in the neighborhood, the officers retrieved several plastic garbage bags from the curb directly in front of 3665 Hillside and examined them. A search of the trash revealed the following items: personal paperwork and mail in the name of Shaunte Martin; a baking soda box which Officer Fangman noted through his experience is often used by drug traffickers as an ingredient in the manufacture of crack cocaine; several whole and partial plastic baggies similar to those commonly used by cocaine traffickers to package and distribute cocaine for sale; a white powder residue on the lining of some of the baggies which field-tested positive for cocaine; at least one plastic baggie that had been clipped or torn in a manner consistent with those often found in the possession of drug traffickers; and dog feces.

Based upon the above information, Officer Fangman prepared an affidavit for a search warrant. However, the affidavit contained two inaccuracies – Officer Fangman characterized the tipster as a "confidential source of information," rather than an anonymous source, and, although he mentioned the tipster's information regarding a blue Cadillac, in another portion of the affidavit he requested permission to conduct a search of a *red* Cadillac on the premises.

A search warrant was approved by a Hamilton County Municipal Court judge on February 20, 2007, the same day that the tip was received and the investigation was conducted. The search warrant was executed at 3665 Hillside, yielding drug and weapons contraband and resulting in Roberson's arrest.[2]

Roberson moved to suppress the seized evidence on the ground that Officer Fangman's affidavit contained false statements, which were either knowingly, intentionally, or recklessly made. Specifically, he challenged the information that the tipster claimed to have been in the residence within 72 hours and also noted the discrepancy in the description of the Cadillac. In support of his motion, Roberson furnished the affidavit of Shaunte Martin, in which she averred that she knew the identity of the tipster and, to her personal knowledge, even though she worked outside of the home, this individual had not been in her home in the 72 hours preceding the search. Roberson maintained that once this false information was excluded from consideration, the remaining facts cited in Officer Fangman's affidavit were insufficient to establish probable cause to search the residence. Defense

---

[2]The warrant also refers to a red, not blue, Cadillac.

counsel requested that the district court hold a *Franks* hearing to determine the veracity of Officer

Fangman's statements in the affidavit.[3]

On September 24, 2007, the district court conducted an evidentiary hearing on Roberson's

motion to suppress. Two witnesses testified – Shaunte Martin and Officer Fangman. Shaunte

Martin, a nurse, stated that she lived at 3665 Hillside with Roberson and their four children. She

claimed that she learned the identity of the tipster through conversations the source had with a

mutual acquaintance. Martin identified the tipster as Michael Peterson, a former friend of Roberson,

but she explained that due to a feud with Roberson, Peterson had not been permitted in her home for

at least a year prior to the execution of the search warrant in February 2007. She claimed that only

two other adults – Roberson's grandfather and another individual, David Wilson, whom she was

"pretty sure" was not the tipster because he was a close family friend – were in her home in the

relevant 72-hour period preceding execution of the search warrant. Martin further testified that the

blue Cadillac described in the affidavit had been inoperable for six months or more and was on jacks

for transmission repairs at the rear of the residence. She admitted that because she worked eight-

hour days at a nursing home, she had no knowledge regarding who was in the house while she was

at work.

Officer Fangman testified at the hearing and reiterated the details of his investigation leading

up to the application for and execution of the search warrant. He acknowledged inaccuracies in the

---

[3]Under *Franks v. Delaware*, 438 U.S. 154 (1978), a reviewing court must strike from the affidavit false statements made deliberately or with reckless disregard for the truth. *See generally United States v. Graham*, 275 F.3d 490, 504-05 (6th Cir. 2001); *United States v. Hill*, 142 F.3d 305, 310 (6th Cir. 1998).

affidavit regarding the color of the Cadillac and the fact that the tipster was actually an anonymous person, not a "confidential source," as described in the affidavit.

Following the hearing, the district court issued an Opinion and Order denying Roberson's suppression motion. The court "conclude[d] that the information provided by the anonymous source should not have been described as coming from a 'confidential source of information' in the Affidavit." Moreover, "at least a portion of the information supplied to law enforcement through the anonymous tip was either stale or inaccurate and not reliable." The court did not identify the questionable evidence but held, in any event, that "even if [it] were [to] find the statements in the Affidavit from the 'source' were false and the Court disregarded the information obtained from the 'source,' . . . there remains sufficient content in the Affidavit to support a finding of probable cause." In so concluding, the court took note of (1) the same-day temporal connection between the trash pull and the request for a search warrant; (2) the fact that there was evidence of drug trafficking obtained from the trash pull, i.e., a box of baking soda, several whole and partial plastic baggies, some of which contained white powder residue which field-tested positive for cocaine, and one of the baggies had been clipped and torn in a manner consistent with the practice of drug handlers; (3) the neighbor's observations concerning high traffic and transactions in the front of the residence; and (4) the fact that the officers appropriately linked Roberson to the residence. The district court therefore concluded that probable cause existed for issuance of the search warrant and denied defendant's motion to suppress.

Following the denial of his motion, Roberson conditionally pled guilty to the drug possession and firearm counts pursuant to a plea agreement that reserved his right to appeal the decision on the suppression motion. Following the district court's imposition of a sentence of 180 months' imprisonment on both counts, Roberson now timely appeals and raises his preserved challenge to the order denying his motion to suppress evidence.

II.

Roberson contends that the district court erred when it held that the redacted affidavit established probable cause for the police to search the home in which he lived. We disagree.

The district court's denial of a motion to suppress is reviewed by this court for clear error with regard to the court's factual findings and de novo with respect to conclusions of law. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). We afford great deference to the magistrate's determination of probable cause, and we will reverse the ruling only if it is arbitrarily made. *Id.* In our review, we consider the evidence in the light most favorable to the government. *Id*. at 306-07.

In determining whether to issue a search warrant on the basis of a particular affidavit, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying the hearsay information,' there is probable cause." *United States v. Smith*, 510 F.3d 641, 652 (6th Cir. 2007) (quoting *United States v. King*, 227 F.3d 732, 740 (6th Cir. 2000)). "The affidavit underlying a search warrant is sufficient to support a finding of probable cause if, based on the totality of the circumstances, it provided the magistrate with a substantial basis for concluding

that there was probable cause to issue the warrant." *United States v. Fowler*, 535 F.3d 408, 414 (6th Cir. 2008) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is found to exist when there is a fair probability that evidence of a crime will be located on the premises of the proposed search." *Jackson*, 470 F.3d at 306 (internal citations and quotation marks omitted). Because "[r]equirements for searches based on an anonymous tip are significantly more stringent than those based on a confidential informant with a reliable track record vouched for by law enforcement officials," *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001), substantial independent police corroboration is typically essential. *Jackson*, 470 F.3d at 307.

In the present case, we need not address the propriety of the district court's imprecise *Franks* ruling because, like the district court, we agree that even if the information obtained from the anonymous source is excised from the affidavit, the evidence gathered from the officers' independent investigation and surveillance of 3665 Hillside as set forth in the affidavit is sufficient to establish probable cause for the issuance of a warrant.

During the investigation, completed from start to finish on the same day that the anonymous tip was received, Officer Fangman, a seasoned member of the RENU investigative force, surveilled the address, canvassed the neighbors, checked official records, and conducted a so-called "trash pull." The investigation produced numerous incriminating indicators of drug trafficking. As set forth in the affidavit, Officer Fangman determined that Roberson and Martin lived at 3665 Hillside Avenue; indeed, he saw Roberson emerge briefly from the residence. A records check disclosed that

Roberson had prior drug-related convictions. Officer Fangman learned from a neighbor that high-volume traffic occurred around the house in a manner consistent with drug trafficking. An analysis of the trash from the residence revealed a box of baking soda, which is often used in cocaine trafficking, as well as plastic baggies, one of which was clipped at the corner in a manner consistent with cocaine packaging. Significantly, the baggies field-tested positive for cocaine residue. The totality of these circumstances provided the magistrate with a substantial basis to conclude that there was probable cause to issue the warrant.

Indeed, under analogous circumstances, we have affirmed the existence of probable cause. *See United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002) (holding that the district court acted within its discretion in not allowing a confidential informant to testify in support of the defendant's suppression motion because, even if the informant's statements regarding drug activity were excised from the search warrant affidavit, the remaining information obtained through a trash pull, which revealed plastic bags containing wrappers with cocaine residue, supplied sufficient probable cause for the search warrant); *Hill*, 142 F.3d at 310-11 (affirming decision finding probable cause to issue a search warrant where the affidavit established that the affiant was an experienced narcotics investigator; the defendant had prior drug trafficking convictions; information from a confidential informant indicated that the defendant engaged in drug trafficking on a regular basis and maintained drugs and weapons at the location to be searched; periodic surveillance corroborated the informant's information; and marijuana and cocaine residue, and packaging materials, were found inside trash bags left on the defendant's lawn within twenty-four hours before preparation of the

affidavit); *United States v. Wingate*, 191 F.3d 454, 1999 WL 775917, at *3-4 (6th Cir. Sept. 24, 1999) (table decision) (holding that traffic around the searched residence, the presence of a known drug dealer, and trash pulls that revealed cut straws, torn plastic baggies, marijuana stems, and one baggie with cocaine residue, constituted substantial basis for magistrate's probable cause determination); *see also United States v. Allebach*, 526 F.3d 385, 387 (8th Cir. 2008) ("We have little hesitancy in concluding a reasonable magistrate would conclude the materials found in the trash – two plastic bags with cocaine residue, two corners torn from plastic bags, Brillo pads, a film canister with white residue – were sufficient to establish probable cause that cocaine was being possessed and consumed in Allebach's residence.") (internal footnotes omitted).

Thus, even striking the anonymous tipster's statements entirely from the affidavit, the remaining corroborating information of drug activity at 3665 Hillside Avenue obtained by Officer Fangman through the same-day investigation provided probable cause for the warrant's issuance.

Roberson's remaining argument – that the affidavit insufficiently linked him to the residence because the "police simply did not know if Roberson or Martin placed the incriminating evidence in the trash" – is without merit. The search warrant was directed at the residence, not defendant's person, *Hill*, 142 F.3d at 311, and there was, in this case, an established nexus between the place to be searched and the evidence sought. *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). "[A]n affidavit in support of a search warrant does not need to name or describe the person who sold the drugs or name the owner of the property." *United States v. Pinson*, 321 F.3d 558, 564 (6th Cir. 2003). "'While probable cause for arrest requires information justifying a reasonable belief that a

crime has been committed and that a particular person committed it, a search warrant may be issued on a complaint which does not identify any particular person as the likely offender.'" *Id*. (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

III.

For all of these reasons, we affirm the district court's order denying defendant's motion to suppress the evidence and the judgment of conviction.